PETER L. CARR, IV (SBN 256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (SBN 284280)
NNEAL@THEPLCLAWGROUP.COM
LAUREN K. MCRAE (SBN 331296)
LMCRAE@THEPLCLAWGROUP.COM
**PLC LAW GROUP, APC**
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE: (310) 400-5895
ATTORNEYS FOR PLAINTIFF,
**TERRENCE HACKETT**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE HACKETT,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES; and DOES 1 through 10, inclusive,<br><br>    Defendants | Case No. 2:24-cv-5250<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TERRENCE HACKETT complains of Defendants COUNTY OF LOS ANGELES, and DOES 1 through 10, inclusive, as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988.

2. State law claims for relief are within this Court's supplemental jurisdiction



pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the County of Los Angeles, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

4.     At all times in this Complaint, Plaintiff TERRENCE HACKETT (hereinafter "Mr. Hackett" or "Plaintiff"), was and is a resident of the State of California in the County of Los Angeles.

5.     Defendant COUNTY OF LOS ANGELES (hereinafter referred to as "COLA") is, and at all times in this Complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COLA possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LOS ANGELES SHERIFF'S DEPARTMENT ("LASD") and its tactics, methods, practices, customs and usages

6.     At all relevant times mentioned herein and material hereto, the Defendant DOE deputies ("Defendant Deputies") described below engaged in law enforcement as deputies, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant COLA, duly employed as deputies by the LASD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

7.     Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

8.     On the evening of August 22, 2022, Terrence Hackett was driving alone as he exited Interstate 110 onto Vermont Avenue.

9.     Plaintiff was not driving erratically nor under the influence of alcohol or other substances.



-2-
COMPLAINT

10. As Plaintiff drove past a law enforcement vehicle, LASD Deputies shone a light into Plaintiff's vehicle.

11. The Defendant Deputies' vehicle made a U-turn and followed Plaintiff onto Vermont Avenue without activating their lights or siren to signal or effectuate a traffic stop.

12. Plaintiff continued to drive legally and normally. Plaintiff used his turn signal to indicate that he would turn right onto Normandie Avenue.

13. The Defendant Deputies' vehicle activated its flashing lights and a second LASD vehicle joined in pursuit.

14. Plaintiff immediately slowed to approximately 15 miles per hour, activated his hazards and rolled down his window. Plaintiff told the Defendant Deputies, "I am going to pull over at a gas station."

15. Plaintiff came to a complete stop at an Exxon Mobil gas station that was better lit than the previous roadways.

16. Four LASD Defendant Deputies approached his car, shone lights inside, and put their hands inside the openings of Plaintiff's car windows.

17. Plaintiff told the Deputies that he wanted to go to a well-lit area because he was scared to interact with the Defendant Deputies in darker roadways.

18. Plaintiff complied with Deputies' request for him to turn his car off.

19. Doe Deputy # 1 opened Plaintiff's driver's-side door, grabbed the back of Plaintiff's neck, yelled at Plaintiff, inserted his body into Plaintiff's car, put the full weight of his body on top of Plaintiff, placed his elbow against Plaintiff's neck, and pulled Plaintiff out of his vehicle.

20. Doe Deputy # 2 inserted his body into Plaintiff's car from the passenger-side door and pushed Plaintiff out while the Doe Deputy # 1 pulled Plaintiff.

21. Multiple deputies searched the entirety of Plaintiff's car without Plaintiff's consent, including searching the front seats, back seats, glovebox, and trunk.

22. At the time of the traffic stop, Plaintiff was lawfully travelling with a pistol. Per Cal. Penal Code § 25610, Plaintiff's pistol was unloaded and stowed in a safe.

23. Deputies unlawfully seized the pistol.

24. Deputies had Plaintiff's car towed at Plaintiff's expense. In the process, the towing company used equipment that damaged Plaintiff's car, causing Plaintiff to pay for vehicle repair.

25. Deputies booked and jailed Plaintiff at Los Angeles County Jail. After his release, Plaintiff was charged with driving with a concealed weapon.

26. Since the time that the Deputies seized the pistol in their unlawful search, Plaintiff has been unable to retrieve his pistol despite going to Imperial and Normandie Station to request information and assistance.

27. As a result of the subject incident, Plaintiff has suffered injuries including multiple contusions to his body, a fractured ankle, emotional distress, and humiliation.

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, EXCESSIVE FORCE, 42 U.S.C. § 1983
### (Against All Individual Doe Defendants)

28. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

29. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

30. As a result of the above-described intentional acts and omissions of the Defendant Deputies, collectively and individually, Plaintiff' Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

a.    Doe Deputy # 1 forced open Mr. Hackett's car door;

b.    Doe Deputy #1 forced his body into Mr. Hackett's car;

c.    Doe Deputies forced their arms into Mr. Hackett's car window;

d.    Doe Deputy # 1 grabbed the back of Mr. Hackett's neck;



    e.       Doe Deputy # 1 placed his full body weight on top of Mr. Hackett's body within Mr. Hackett's vehicle;

    f.        Doe Deputy # 1 forcefully pulled Mr. Hackett out of his vehicle;

    g.      Doe Deputy # 2 inserted his body into Mr. Hackett's car;

    h.      Doe Deputy # 2 pushed Mr. Hackett out of his driver's side door;

    i.        Doe Deputies handcuffed Mr. Hackett;

    j.        Doe Deputies forced Mr. Hackett against the patrol car.

31.   The conduct of the Doe Deputies was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

32.   As a result of the conduct of Defendant Doe Deputies, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

33.   At no point did Plaintiff pose a reasonable threat of violence or danger to the Defendant Doe Deputies or to any other individual.  Plaintiff made no aggressive, furtive, or physical movements that would have suggested to any reasonable officer that Plaintiff had the will or ability to inflict substantial bodily harm against any individual.

34.   Additionally, Defendant Doe Deputies acted entirely without probable cause or reasonable suspicion that Plaintiff had committed, was committing, or would commit any crime.

35.   Before he was forcibly pulled out of the vehicle, Plaintiff did not resist Doe Defendant Deputies. He actively asked them questions and let him know why he elected not to open his door at the inception of the contact.

36.   Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS, FALSE ARREST, 42 U.S.C. § 1983

### (Against All Individual Doe Defendants)

37. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

38. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

39. As a result of the above-described intentional acts and omissions of the Doe Deputies, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, including the right to be from arrest without probable cause, as applied to state actors by the Fourteenth Amendment, was violated when:

   a.   Doe Deputies effected a traffic stop of Plaintiff despite the absence of any moving or vehicle violations by Plaintiff;

   b.   Doe Deputies detained Plaintiff without reasonable suspicion that a crime had occurred or would occur;

   c.   Doe Deputies arrested Plaintiff without probable cause that a crime had occurred or would occur;

   d.   Doe Deputies subjected Plaintiff to an unlawful search of his person and his vehicle because of their unlawful detention and arrest of Plaintiff.

40. The conduct of the Doe Deputies was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

41. As a result of the conduct of Doe Deputies, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.



42. Plaintiff Terrence Hackett was arrested without a warrant, probable cause, or reasonable suspicion.

43. Accordingly, Doe Deputies are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## THIRD CAUSE OF ACTION
## UNLAWFUL SEARCH AND SEIZURE, 42 U.S.C. § 1983
### (Against All Individual Doe Defendants)

44. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

45. Defendant Deputies seized Mr. Hackett when they removed him forcibly from his vehicle.

46. Defendants intentionally and unlawfully patted down and searched Mr. Hackett without reasonable suspicion, probable cause, consent, or any other lawful justification.

47. Defendants unlawfully searched Mr. Hackett's his vehicle without reasonable suspicion, probable cause, consent or any other lawful justification.

48. Defendants further seized Mr. Hackett's legally owned and legally stored firearm. This seizure is still in progress as the firearm has not been returned to Mr. Hackett.

49. Defendants did not have reasonable suspicion that Mr. Hackett had committed, was committing, or was about to commit a crime at any point during their search or seizure of Mr. Hackett and his property.

50. Defendants acted under color of law when they searched and seized Mr. Hackett and his property.

51. The actions of Defendants described herein violated Mr. Hackett's right to be free from unlawful searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.



## FOURTH CAUSE OF ACTION

## MALICIOUS PROSECUTION (42 U.S.C. § 1983)

## (Against Defendants DOES 1 through 10, inclusive)

1.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

2.     Defendants DOES 1 through 10, inclusive, while acting under color of law, deprived Plaintiff of his civil rights, more particularly his right to be free from malicious prosecution.

3.     Defendants DOES 1 through 10, inclusive, contributed to, caused, and/or initiated a criminal prosecution against Plaintiff with malice and/or with the purpose of depriving her of her constitutional rights.

4.     On information and belief, DOES 1 through 10, inclusive, made false statements in their reports to cover up Defendants' unlawful investigation, detention, arrest and use of force.

5.     Plaintiff was criminally charged based upon DOES' false representations regarding the subject incident. The charge against Plaintiff was dismissed.

6.     Plaintiff brings this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

7.     As a result of Defendants' malicious prosecution of Plaintiff, Mr. Hackett suffered loss of liberty, harm to their reputation severe emotional trauma and



extreme mental distress.

8.     The conduct of Defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages against her.

9.     Plaintiff brings this claim individually and seeks general and special damages in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**

**MUNICIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE,**

**42 U.S.C. § 1983**

**(Against Defendant COLA)**

52.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

53.   Defendant COLA is and at all times herein mentioned, has been a public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant COLA possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LASD officers and their tactics, methods, practices, customs and usages.

54.   At all times herein mentioned, Defendant Doe Deputies and each of them, were employees acting under the direction and control of the LASD, who knowingly and intentionally promulgated, maintained, applied, and enforced the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Such customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace



deputies employed by the LASD.

55. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COLA include, but are not limited to:

a. Defendant COLA had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LASD employees, including the individual Doe Deputies herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests;

b. Defendant COLA refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

c. Defendant COLA refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by LASD employees;

d. Defendant COLA failed to adequately supervise the actions of employees under its control;

e. Defendant COLA failed to adequately train its officers so as to avoid constitutional violations;

f. Defendant COLA condoned and participated in the practice of prosecuting groundless criminal charges for the purpose of insulating COSM employees from civil liability and reducing or dismissing criminal charges against individuals in return for releasing them from civil liability;

g. Defendant COLA tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

h. Defendant COLA tacitly condones and encourages use of excessive force on citizens;

i. Defendant COLA fostered and encouraged an atmosphere of



lawlessness, abuse and misconduct, which by December 20, 2018, and thereafter, represented the unconstitutional policies, practices and customs of the COLA.

56.   The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant COLA:

a.      False Report and Unreasonable Force.  On or about July 17, 2007, Deputy Christian Chamness claimed Raymond Davison blocked deputies as they tried to leave a barbershop where they had arrested Davison's son and another man.  Deputy Chamness made false statements in his arrest report stating that Mr. Davison advanced on him causing him to pepper spray him. He arrested Mr. Davison for PC 148 resisting or delaying a peace officer to which the Los Angeles County District Attorney's office charged him. Charges against Mr. Davison were only dropped after video evidence recorded by a security camera contradicted Deputy Chamness' account.  Mr. Davison filed a civil suit and settled with the COLA for $195,000.  While Deputy Chamness was suspended for 25 days as a result of his conduct, he was assigned to the Hall of Records in August of 2017 and paid $205,239 in annual salary, including overtime, other earnings and benefits as of 2018.

b.      False Report and Unreasonable Force.  On or about January 4, 2017, Bryan Joshua Cook was sitting in the living room of his residence located in San Dimas, California when the Defendant deputies entered his home and unjustifiably tased him.  Allegedly, Mr. Cook and his wife had been arguing earlier in the day and Mr. Cook's father-in-law called 911 because he did not like the fact that they were arguing.  As the Deputies walked through Mr. Cook's home, Mr. Cook was sitting on his couch drinking water and no crime was in progress nor did the officers observe any sign of a physical altercation or weapons.  After seeing the deputies in his home, Mr. Cook immediately asked the deputies if they had a warrant and repetitively requested the deputies leave his home. At some point, Deputy Dondanville informed Mr. Cook that



-11-
COMPLAINT

he wanted search him for weapons.  Mr. Cook responded, "Do not to touch me."   Then, Mr. Cook stood up from his seated position and Deputy Dondanville tased him without warning or legal justification.   Deputy Dondaville falsely arrested Mr. Cook for resisting, delaying or obstructing a public officer in violation of Penal Code Section 148(a)(1).  This charge was ultimately dismissed and Mr. Cook filed a civil action that is pending.

c.      False Report and Unreasonable Force.  On October 13, 2013, Nolan Hillis, a 26-year-old developmentally challenged male who suffered from an intellectual disability and seizure disorders, was tased and unlawfully arrested by LASD Deputies Sahinbas and Ajufoh while waiting for a bus to arrive at a Metro Station in Los Angeles, CA.  The deputies each wrote arrest reports indicating that Mr. Hillis became angered and approached Deputy Sahinbas in an aggressive manner when Deputy Sahinbas requested proof of fare. However, video evidence showed differently.  The video shows Deputy Ajufoh drawing and pointing his service weapon at Mr. Hillis while Deputy Sahinbas pushes Mr. Hillis.  Without warning, Deputy Sahinbas then drew his taser and tased Mr. Hillis causing him to fall down a flight of stairs.  Mr. Hillis was arrested for battery on a peace officer PC 243(b). The criminal case was dismissed against Mr. Hillis and Deputy Sahinbas' supervisor discussed with him how different methods could have been used to avoid the confrontation.

57. COLA had actual notice that its deputies were ill-prepared and biased in respect to field contacts with African American men and the use of physical force against African American men.

a.      A 2020 study by Catalyst California and the ACLU of Southern California found that African American residents of Los Angeles experience the LASD highest traffic stop rates of any other racial group in the County. This finding was based on data from the Racial and Identity Profiling Act (2019).

b.      The same study found that LASD deputies stop and search more than 3



out of every 1,000 Black people who live in areas patrolled by LASD without any suspicion that those people are engaged in any criminal activity.

c.      An ABC7 study found that between 2018 and 2019, the traffic stop rate for African Americans by the LASD was twice as much as the rate for white people in the County.

d.      The Racial and Identity Profiling Advisory ("RIPA") Board's annual racial profiling report contained findings consistent with those cited above, regarding the over-representation of African Americans in traffic stops in California consistently across law enforcement agencies. This report also found that Black residents were detained at a curb or in a patrol car at the highest rate of any group, that they were ordered to exit their vehicles at the highest rate of any group, and that they were issued a sole charge for resisting arrest at a rate of over three times that of the state average. Specifically, 19.2% of all traffic stops resulting in a sole resisting arrest charge are attributable to Black drivers.

e.      Furthermore, the LASD is known to be home to highly secretive, collusive deputy gangs that perpetuate racism and violence which has come to permeate the LASD as a whole.

f.      The existence of deputy gangs and/or subgroups within LASD have been confirmed by reports from groups such as the Citizens Commission on Jail Violence and individuals including Judge James Kolts.

g.      In the 1990s, federal lawsuits alleged that two deputy gangs were carrying out racist attacks. One lawsuit made claims of racist attacks by the Wayside Whites gang against inmates in LASD custody.

h.      The other, a class-action comprised of over 100 Lynwood residents, claimed that the Lynwood Vikings was carrying out racially-discriminatory terrorizing, beating, illegal search and seizures, and other offenses by another deputy gang. A federal judge described the Lynwood Vikings as a "neo-Nazi, white supremacist gang" that used "terror-type" tactics.



i. In 2009, at least six LASD officers, including members of the "3000 Boys" deputy gang, shouted racial slurs while beating inmate Evans Tutt. This racially-motivated beating left Mr. Tutt with a shattered jaw, collapsed lungs, broken lengths, blindness, fractured eye sockets, and nerve damage.

j. In 2013, LASD terminated seven members of the Jump Out Boys gang. However, the majority of these terminated deputies were later reinstated.

k. The Los Angeles Office of the Inspector General's *Analysis of the Criminal Investigation of the Alleged Assault by the Banditos*, published in October 2020, determined that "substantial evidence [supports] the conclusion that the Banditos" – a subgroup of LASD deputies at the East Los Angeles Station – "are gang-like, and their influence has resulted in favoritism, sexism, racism, and violence."

l. In 2020, Deputy Art Gonzalez filed a federal lawsuit alleging retaliation against him as a result of his refusal to join the "Executioners" deputy gang that operates out of Compton Station.

m. In 2021, Deputy Javier Guzman, Jr. filed a similar lawsuit to that of Deputy Gonzalez, alleging that the Compton Executioners deputy gang had imposed illegal arrest quotas upon deputies at the station. Deputy Guzman's lawsuit demonstrates how tight-knit deputy gangs can use their group power to impose unlawful policing tactics in the station in which they operate.

n. These are just some of the sixteen alleged deputy gangs that have existed within LASD stations and jails from 1970 to the present day.

58. The decisions of the Doe Deputies to unlawfully pull-over, detain, brutally assault and unlawfully arrest Mr. Hackett for no conceivably valid reason represents a larger systemic issue of predatory policing and a culture among LASD that encourages violence and harassment, particularly towards Black Los Angeles residents.

59. By reason of the aforesaid policies, customs, practices and usages, Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States



-14-
COMPLAINT

Constitution were violated.

60. On information and belief, not one of the Doe Deputies involved in the aforementioned incident have been reprimanded or sanctioned by Defendant COLA or LASD for their actions against Plaintiff.

61. On information and belief, not one of the Doe Deputies had the requisite hours that LASD required for mental health patrol deputies.

62. On information and belief, the extreme escalation of a verbal command into a violent arrest was ratified by Defendant COLA and LASD by failing to discipline any officer involved or modify training to address this type of situation in the future.

63. Defendant COLA has acted with deliberate indifference to Plaintiff's constitutional rights. As a proximate result of these acts, Plaintiff's constitutional rights have been violated, causing him to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

64. Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE BANE ACT, Ca. Civil Code §§ 52 and 52.1
### (Against All Individual Doe Defendants)

65. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

66. As alleged herein, Defendants interfered with Plaintiff's rights under state and federal laws and under the state and federal constitution including, without limitation, the right to be free from unreasonable search and seizure, the right to due process, and the right to bodily integrity, including his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution.

67. The Eighth Amendment to the United States Constitution and Article I of the California Constitution guarantee the right of persons to be free from cruel and



-15-
COMPLAINT

unusual punishment.   Defendants, by engaging in deliberate indifference to Plaintiff's right to be free from unreasonable search and seizure interfered with Plaintiff's enjoyment of their rights under federal and California law, thus giving rise to claims for damages pursuant to California Civil Code § 52.1.

68.   As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

69.   As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Plaintiff sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

70.   The conduct of Doe Deputies, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages.

71.   Plaintiff seeks statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

**SEVENTH CAUSE OF ACTION**

**ASSAULT AND BATTERY**

**(Against All Individual Doe Defendants)**

72.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

73.   On August 22, 2022, Defendant Doe Deputies, acting individually and in concert with other law enforcement agents, assaulted and battered Plaintiff Mr. Hackett by acts which included but were not limited to:

a.   Doe Deputy # 1 grabbing the back of Mr. Hackett's neck;

b.   Doe Deputy # 1 yelling at Plaintiff;

c.   Doe Deputy #1 placing his full bodyweight on top of Plaintiff;

d.   Doe Deputy # 1 pulling Plaintiff out of his vehicle;



e.    Doe Deputy # 1 placing his elbow against Plaintiff's neck;

f.    Doe Deputy # 2 pushing Plaintiff out of his vehicle; and

g.    Doe Deputies handcuffing Plaintiff.

74.    In assaulting and battering Plaintiff as described herein, Deputies proximately caused injuries to Mr. Hackett.

75.    Both prior to and during the time in which he was assaulted and battered, Plaintiff was not armed with any kind of weapon and posed no reasonable threat of violence to the Deputies, nor to any other individual.

76.    When the Defendant Doe Deputies made physical contact with Mr. Hackett, as described herein, he made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he had the will or ability to inflict substantial bodily harm against any individual prior to being attacked.

77.    Due to the wrongful, intentional, and malicious acts of the Deputies, Plaintiff has suffered and will continue to suffer extreme and severe mental anguish.

78.    As a proximate result of the aforementioned conduct of Deputies, Plaintiff has been required to employ and did employ physicians to examine, treat, and care for him, and incurred other incidental medical expenses in an amount according to proof at trial.

79.    The acts and omissions alleged herein were intended by each Doe Deputy to cause injury to Plaintiff Mr. Hackett. The actions described herein were performed with a conscious disregard for the rights and safety of Plaintiff, as the acts and omissions were willful, wanton, malicious, and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

/ / /

/ / /

/ / /

/ / /



-17-
COMPLAINT

/ / /

## EIGHTH CAUSE OF ACTION
### NEGLIGENCE, Cal. Govt. Code §§ 815.2(a), 820(a)
### (Against All Defendants)

80. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

81. Plaintiff is informed and believes and there upon alleges that Defendant Doe Deputies, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to:

    a.    Negligently detaining and arresting Plaintiff without probable cause or reasonable suspicion to believe that Plaintiff had or was committing a crime;

    b.    Negligently using excessive and unreasonable physical force upon the person of Plaintiff when the same was unnecessary and unjustified;

    c.    Negligently failing to determine that Plaintiff posed no threat of physical harm to any person when Plaintiff assaulted and battered;

    d.    Negligently assaulting and battering Plaintiff as described;

    e.    Negligently conducting an unlawful search and seizure of Plaintiff and his property as described; and

    f.    Negligently failing to intercede when fellow Defendant Officers violated Plaintiff's constitutional rights.

82. All of these negligent acts proximately caused severe injuries to Plaintiff, as described herein.

83. As a result of these acts, Plaintiff was placed in great fear of their lives and physical well-being. Moreover, due to the negligent acts of each of these Doe Deputies, Plaintiff has suffered and will continue to suffer serious pain and severe mental anguish.



84.  As a proximate result of the above-mentioned conduct of Defendant Doe Deputies, and each of them, Plaintiff has been required to employ and did employ physicians and surgeons to examine, treat, and care for them, and incurred other incidental medical expenses in an amount according to proof at trial.

## PRAYER

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

1.  For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.  For special damages according to proof;

3.  For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.  For prejudgment interest;

5.  For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6.  For reasonable costs of this suit incurred herein;

7.  For such other and further relief as the Court may deem just, proper and appropriate.

Dated: June 21, 2024                    **PLC LAW GROUP, APC**

                                        _/s/ Na'Shaun L. Neal_
                                        Peter L. Carr, IV
                                        Na'Shaun L. Neal
                                        Lauren K. McRae
                                        Attorneys for Plaintiff
                                        Terrence Hackett



## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a trial by jury on all issues and claims.

Dated: June 21, 2024                              **PLC LAW GROUP, APC**

                                                         /s/ *Na'Shaun L. Neal*
                                                         _____
                                                         Peter L. Carr, IV
                                                         Na'Shaun L. Neal
                                                         Lauren K. McRae
                                                         Attorneys for Plaintiff
                                                         Terrence Hackett

